# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| EDUARDO HENRIQUE MEDEIROS PINTO DE VASCONCELOS, | § § § § |
| Petitioner, | § § CIVIL ACTION NO. 4:10-CV-00628 |
| VS. | § § |
| MICHELLY DE PAULA BATISTA, | § § |
| Respondent. | § |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

On November 15, 2010, Petitioner Eduardo Henrique Medeiros Pinto de Vasconcelos filed this action seeking the return of his daughter, a minor ("BV"), to Brazil. On December 10, 2010, BV's mother, Michelly de Paula Batista, Respondent herein, filed her answer to the petition. On December 28, 2010, Petitioner's Motion to Set a Hearing Date on Issuance of Order to Show Cause was referred to the undersigned, and on January 11, 2011, the case was referred to the undersigned for recommended disposition. On January 13, 2011, the Court conducted an evidentiary hearing on Petitioner's Petition for Return of Child to Petitioner and for Immediate Issuance of Show Cause Order to Respondent. Although all parties involved appeared to have a comfortable working knowledge of the English language, a court-appointed Portugese interpreter was present to assist with the proceedings.

1

## BACKGROUND

BV was born in Brazil in 1997. Petitioner and Respondent were never married. In 2005, Respondent and BV came to the United States. From 2005 until January 2011, Respondent and BV resided in Denton County, Texas with Rod Richards, Respondent's husband. In January 2011, Respondent, her husband, and BV moved to Pennsylvania. Since BV left Brazil in 2005, she has had essentially no contact with her father and has not seen him since leaving Brazil.

While these facts in the case are undisputed, very few others are. Both sides have differing accounts of the nature of the relationship between Petitioner and Respondent and of that between BV and Petitioner. According to Petitioner's testimony, he had a close relationship with his daughter, picked her up from school on a daily basis, and saw her regularly. According to Respondent, Petitioner was abusive toward her, showed little interest in being a father to BV, and only saw his daughter sporadically.

The circumstances surrounding Respondent's departure from Brazil are also in dispute. Petitioner claims that, while he initially agreed that Respondent could take BV to the United States for Respondent's wedding and while he signed her passport, he later withdrew his consent for BV to travel to Texas. Petitioner further alleges that Respondent deceived Brazilian governmental officials in order to remove BV from the country. Invoking her rights against self-incrimination, Respondent offered very little in response to Petitioner's allegations as to her conduct in removing BV from Brazil. Either way, it is clear from the record herein that Petitioner ultimately did **not** consent to BV's permanent removal from Brazil.

## STANDARD

Petitioner has brought this action for the return of BV under the provisions set forth in the Hague Convention on the Civil Aspects of International Child Abduction (hereinafter "CONVENTION") and the International Child Abduction Remedies Act, 42 U.S.C. § 11601, *et seq*. In a case falling under the Hague Convention, a petitioner must establish by a preponderance of the evidence that the child has been wrongfully removed or retained within the meaning of the Convention. 42 U.S.C. § 11603(e). In making a showing of wrongful removal here, Petitioner must prove that (1) BV was a "habitual resident" of Brazil at the time of removal; (2) the removal was in breach of Petitioner's custody rights under the law of Brazil; and (3) Petitioner had been exercising those rights at the time of removal. *Edoho v. Edoho*, 2010 WL 3257480, 4 (S.D. Tex. 2010); *Van Driessche v. Ohio-Esezeoboh*, 466 F. Supp.2d 828, 841 (S.D. Tex. 2006).

Even if a court finds that a child was wrongfully removed, however, a child will not be returned if one of many exceptions is established. The burden shifts to the respondent to establish by a preponderance of the evidence one of the following exceptions: (1) that the proceeding was commenced more than one year after the removal of the child and the child has become "well-settled" in her new environment; (2) that the petitioner was not actually exercising the custody rights at the time of removal or retention or consented to or subsequently acquiesced to the removal or retention; or (3) that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of her views. CONVENTION, arts. 12 & 13; 42 U.S.C. § 11603(e) ("Burdens of Proof"). In addition to these exceptions, a respondent can avoid return of the child by showing the following exceptions by clear and convincing evidence: (1) that

3

there is a grave risk that the return of the child would expose her to physical or psychological harm or otherwise place her in an intolerable situation, or (2) that the return of the child would not be permitted by fundamental principles of the requested state relating to the protection of human rights and fundamental freedoms. CONVENTION, arts. 13(b) & 20; 42 U.S.C. § 11603 (e). "Courts should narrowly interpret a defense and allow it to prevent the child's return only in meritorious cases when the person opposing return has met the burden of proof." *Van Driessche*, 466 F. Supp.2d at 846.

## ANALYSIS

At the hearing held on January 13, 2011, the Court heard testimony from Petitioner, Respondent, Respondent's husband, Rod Richards, and Respondent's friend and former neighbor, Tina Sandlin, as well as *in camera* testimony from BV. The parties also submitted documentary evidence including documents from Brazilian legal proceedings, copies of receipts, and pleadings from proceedings relating to BV in a Denton County family court.[1]

*Wrongful Removal*

The Court first addresses whether Petitioner satisfied his burden in showing BV was wrongfully removed from Brazil in 2005.

To sustain his burden in these proceedings, Petitioner was required to show that: (1) BV was a habitual resident Brazil at the time of removal; (2) the removal was in breach of his custody rights

---

[1]The Court notes that several of the documents submitted by Petitioner were in Portugese. Of those documents that were translated, none were certified translations and much was left to speculation as to the meaning of such documents. While the provisions set forth in 42 U.S.C. §11605 may absolve the parties from certain authentication requirements during proceedings under the Hague Convention, it does not absolve them from providing the Court with accurate English translations.

4

under the law of Brazil; and (3) he had been exercising those rights at the time of removal. *Edoho*, 2010 WL 3257480 at 4; *Van Driessche*, 466 F. Supp.2d at 841. Here, Respondent does not dispute that BV was a habitual resident of Brazil before she left in 2005. What is disputed is whether Petitioner had custody rights under the laws of Brazil and the extent to which he had been exercising them prior to her removal to the United States in 2005.

Having considered the evidence presented, the Court finds that Petitioner was exercising whatever rights he had and attempting to have a relationship with his daughter while she was in Brazil. Thus, Petitioner has satisfied two of the prongs of his burden and the Court's focus turns to whether he had custody rights.

The Hague Convention makes a distinction between rights of custody and rights of access. The Hague Convention's provisions on the Civil Aspects of International Child Abduction define "rights of custody" as those rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence. CONVENTION, art. 5. "[R]ights of access," on the other hand, include the right to take a child for a limited period of time to a place other than the child's habitual residence. *Id.* "[A] parent with a mere right of access does not have a right of custody to invoke the Convention protections that require this Court to return the child." *Van Driessche*, 466 F. Supp.2d at 843.

In these proceedings, Petitioner has offered copies of a Brazilian Court order he claims gives him custodial rights, including the right to determine BV's place of residence. It is highly disputed whether this order confers access rights or custody rights. The English translation provided by Petitioner indicates that, under that order, Petitioner was to pay certain child support and costs

5

associated with BV's education. The order also provided that "the minor's father's right to visit, the author, will be biweekly, apart from previous reciprocal contact." *See* Dkt. 1.

Petitioner has argued that the United States Supreme Court's opinion in *Abbott v. Abbott* directs this Court's decision here. The Court disagrees. In *Abbott v. Abbott*, the Supreme Court held that *ne exeat* rights are sufficient to confer rights of custody under the Hague Convention's provisions. *Abbott v. Abbott*, 130 S. Ct. 1983, 176 L. Ed.2d 789 (2010). *Ne exeat* rights involve one parent's right to consent before the other parent takes the child to another country. *Id.* at 1987. Unlike the petitioner in *Abbott* who showed that Chilean law granted him a right to decide his child's country of residence, Petitioner here has not established that he had any *ne exeat* rights as to BV under Brazilian law. While Petitioner offered the Court copies of legal treatises on international law at the conclusion of the hearing, Petitioner failed to present sufficient evidence at the hearing to show how the order pertaining to visitation also conferred on Petitioner the right to determine BV's country of residence. Petitioner did offer testimony to indicate that Respondent initially sought his approval to take BV to Texas and even signed BV's passport, suggesting he may have had some rights in determining where BV would live or travel. However, without legal documents setting forth such rights, whether Petitioner had sufficient rights to trigger the Hague Convention's return remedy is not wholly settled.

The Court finds that there is insufficient evidence before it to find *Abbott* applicable to these facts. The Court further notes that Petitioner has not filed any written response in opposition to the First Amended Motion to Dismiss (Dkt. 20) filed by Respondent shortly before the oral hearing in which she argues that the Brazilian courts never provided Petitioner with custodial rights that would

6

fall within the Hague Convention's provisions on wrongful removal. Without any written response, Petitioner has not sustained his burden in challenging such an argument.[2]

Petitioner's evidence and arguments regarding the legal interpretation of the Brazilian court's order lack specificity for the Court to determine whether a custody order was in place giving him custodial rights. On the other hand, although it is admittedly not her burden to do so, Respondent has not provided the Court with any Brazilian order that clearly grants her sole custodial or *ne exeat* rights, leaving open the possibility that the matter of custody was never adjudicated in Brazil. And, the Hague Convention's provisions on wrongful removal *do* provide protection to parents seeking return where the parties' legal rights have not been legally established by order or agreement. *See Van Driessche*, 466 F. Supp.2d at 844-45 ("without fully adjudicating the merits of the custody dispute [parents] have equal rights of custody prior to a decree adjudicating custody."). Here, the Court is not convinced that Petitioner has sustained his burden in showing that the rights conferred upon him were custodial in nature. Nonetheless, because there is some governing authority to indicate that he might still be afforded some rights under the Hague Convention, the Court, for purposes of its findings herein, will assume he has.[3] Nonetheless, the Court need not make a determination as to wrongful removal to find that BV should remain in the United States.

---

[2]Further, under the Local Rules of this Court such failure to respond is an alternative grounds for denying Petitioner relief here. Local Rule CV-7 permits the Court to treat Respondent's motion as unopposed and grant the dismissal requested.

[3]As the Court noted at the hearing, however, the evidence presented at the very least suggests that Respondent may be facing some legal problems in Brazil as a result of her conduct in bringing BV to Texas

7

Even assuming arguendo that Petitioner had shown by a preponderance of the evidence that he had custody rights and that BV was taken from Brazil in violation of those rights – which the Court finds cannot be settled without a more thorough presentation on Brazilian law and Petitioner's specific rights thereunder – the Court finds that several exceptions to removal apply here.

<u>*Well-Settled*</u>

Even if a child is determined to have been wrongfully removed, when an action for return of a child is commenced more than one year after the removal of the child and the child has become "well-settled" in her new environment, the Court is not required to order the return of the child. *See* CONVENTION, art. 12. The well-settled exception must be proven by Respondent by a preponderance of the evidence. 42 U.S.C. § 11603(e).

Here, BV was removed from Brazil in May 2005. While Petitioner claims (and the evidence before the Court suggests) that he took action immediately after BV's removal and was advised to begin proceedings in Brazilian state court (later filing a Hague application in Brazil in April 2008), the underlying suit was not filed until November 15, 2010. Article 12 of the Convention is very clear that the Court looks to the date on which *these* proceedings were commenced – not those in another country – in applying the one-year limitations period. CONVENTION, art. 12; *see, e.g., Muhlenkamp v. Blizzard*, 521 F. Supp.2d 1140, 1152 (E.D. Wash. 2007) ("The petition must be filed with the court of record, not the Central Authority, to file within the one-year limitation."). Therefore, these proceedings were not commenced within a year of removal. Indeed, more than five and a half years elapsed before Petitioner filed suit in the United States. Faced with these facts, all parties have conceded that these proceedings commenced more than a year after the removal of the child from

Brazil.

Because more than a year has elapsed, the Court then looks to whether BV is well-settled. Courts determining whether a child is well-settled can look to the following factors: (1) the age of the child; (2) the stability and duration of the child's new residence; (3) whether the child attends school or daycare consistently; (4) whether the child has friends and relatives in the new area; (5) the child's participation in community or extracurricular school activities, such as team sports, youth groups, or school clubs; (6) whether the child attends church regularly; and (7) the mother's employment and financial stability. *Edoho v. Edoho*, 2010 WL 3257480, 6 (S.D. Tex. 2010); *Van Driessche v. Ohio-Esezeoboh*, 466 F. Supp.2d 828, 847 (S.D. Tex. 2006); *In re A.V.P.G.,* 251 S.W.3d 117, 125 (Tex. App. – Corpus Christi 2008, no pet.). "[F]or the child to be well-settled, the court should consider more than whether he or she has a comfortable material existence, taking into consideration the child's living environment and any active measures taken to conceal a child." *Van Driessche*, 466 F. Supp.2d at 848.

At the hearing, the Court heard testimony from Respondent, her husband Rod Richards, their friend and neighbor, Tina Sandlin, and BV herself to support the argument that she is well-settled here. BV is currently 13 years-old. She speaks English fluently, has been attending public schools in Denton, Texas since coming to Texas, has good school attendance records, and currently makes As and Bs. By all accounts, she is a normal American teenager. She is close with her friends and neighbors, attends school sporting and social events, and has slumber parties with girlfriends.

Of particular importance to the Court is the apparent stability of BV's home life since moving from Brazil. She lived with her mother and stepfather at the same address in Denton, Texas since

moving to Texas. BV testified that she feels safe and secure living with her mother and stepfather, Rod Richards, whom she calls "Dad." Her mother and stepfather are both American citizens. In addition to social stability, it appears to the Court that BV is in a medically stable environment. Since moving to the United States, BV has been diagnosed with epilepsy, which is being treated here, and her mother and stepfather are trained as to how to respond if she has an epileptic seizure.

Additionally, although Petitioner does not work (it appears she is financially able to be a full-time parent), her husband Richards does and has been employed with the same company for more than 13 years. After Petitioner filed his action – but a week before the Court's hearing – BV, her mother and stepfather apparently moved from Texas to Pennsylvania as a result of a lateral transfer in Richards' employment. Richards testified that he was required to move in order to maintain his job.

While moving may indicate that a child is not well-settled, that factor is not wholly dispositive. *Van Driessche*, 466 F. Supp.2d at 848.[4] In *Van Driessche,* for example, the Court found the child to be well-settled despite moving several times where the mother had stable employment and had moved as part of gaining financial independence. *Id.* Similarly, here, the recent move from

---

[4] The Hague Convention does provide that "[w]here the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child." CONVENTION, art. 12. The Court finds that neither a stay or dismissal are warranted in this case. BV's stepfather was transferred to Pennsylvania in January 2011 – after the Petitioner filed this action and Respondent appeared herein. The fact remains that, at the time the action was filed — continuing into the present — BV was well-settled in this country. To cause all parties involved to incur additional time and resources in transferring the matter to another jurisdiction within the United States, only to find BV is well-settled here, would not be the best use of judicial or litigant resources.

Pennsylvania, after living in the same home in Texas for more than five years, does not detract from BV's stability in this country. And, it is in no way the result of transient behavior. *Compare In re A.V.P.G.,* 251 S.W.3d at 126 ("This transient nature of the children's accommodations can hardly be interpreted as that of being well-settled"). Indeed, it appears to the Court to be indicative of a stable economic and home environment. *Compare id.* (finding children were not well-settled in Texas where children were living in Belgium with both parents when they were suddenly uprooted, resided for a time with their mother's parents in Mexico, then relocated to a different home in Mexico with their mother; were placed in foster care in Texas; and then resided with their grandparents in Texas). Having heard the evidence presented – and there being no indication to the Court that the move was an attempt to secret BV's whereabouts – the Court finds that Richards and Respondent would not have been able to maintain a stable economic environment for BV had they not moved as requested by Richards' employer.

The Court finds that BV is well-settled in the United States. *Van Driessche*, 466 F. Supp.2d at 847-48 (finding well-settled exception applied where six year-old child had been continually residing in Houston for two-thirds of her life); *Edoho*, 2010 WL 3257480 at 6 (applying well-settled exception where children had lived in Houston for almost two years, lived close to extended family, participated in activities and church, and attended school). Further, there was no evidence or argument offered at the hearing that Respondent took any actions to actively conceal BV's whereabouts. According to the testimony presented, Petitioner knew the address where BV lived with her mother and stepfather for more than five years. And, Petitioner had access to an email address and phone number where BV or Petitioner could be reached. Because there was no evidence

presented suggesting that any efforts were made to conceal BV's whereabouts in Texas from Petitioner, equitable tolling is not available here. *Van Driessche*, 466 F. Supp.2d at 848 ("The purpose of equitable tolling is to ensure that a parent who takes intentional and significant steps to conceal his or her children for more than one year will not be rewarded for that misconduct by creating eligibility for an affirmative defense not otherwise applicable"). Well more than one year has elapsed since removal, and BV is now well-settled in this country; thus, the exception set forth in Article 12 of the Hague Convention applies and removal is not appropriate.

*Age and Maturity*

The Hague Convention also permits the Court to refuse to return a child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of her views. CONVENTION, art. 13. It is not enough that the child has maintained friendships, prefers her new residence over the country of removal, or enjoys a more stabilized situation to support a finding that the child is mature enough for the Court to take into account her views. *England v. England*, 234 F.3d 268, 272 (5th Cir. 2000) (finding 13 year-old had not attained sufficient maturity). No age is too young or old enough as a matter of law for the exception to apply, but must be determined on a case-by-case basis. *See id.*

In this case, BV remained in chambers during the hearing and was represented by an attorney ad litem during the proceedings. At the close of the parties' cases, the Court questioned BV *in camera*. The attorney ad litem was present for this questioning and given the opportunity to question her client. Such practice is in accordance with Section 153.009 of the Texas Family Code. *See* TEX. FAM. CODE § 153.009 ("Interview of Child in Chambers").

The Court finds that it is appropriate to take into account BV's views here. Although soft-spoken and understandably shaken by the prospect of leaving the United States, she demonstrated an understanding of the proceedings and of her right to state her preferences. She is a good student, demonstrated clear cognitive abilities, and stated a desire to remain with her mother and stepfather. The Court finds that her wishes are another basis to deny Petitioner's request for her return to Brazil. *Compare England*, 234 F.3d at 272-73 (finding that district court erred in applying maturity exception to 13 year-old who had been diagnosed with Attention Deficit Disorder, had learning disabilities, took Ritalin regularly, and was scared and confused by the circumstances producing the litigation).

*Grave Risk & Fundamental Fairness*

Respondent also claimed that there is a grave risk that the return of BV to Brazil would expose her to physical or psychological harm or otherwise place her in an intolerable situation, another exception preventing removal under Article 13(b) of the Hague Convention on the Civil Aspects of International Child Abduction. CONVENTION, art. 13(b). Respondent was required to show this exception through clear and convincing evidence, a higher standard than that which applies to the above-discussed exceptions. 42 U.S.C. § 11603 (e). "In order to invoke this exception, the Respondent must show by clear and convincing evidence that returning the child would place the child in an intolerable situation." *Van Driessche*, 466 F. Supp.2d at 847. "The harm must be greater than normally to be expected when taking a child away from one parent and passing the child to another parent." *In re A.V.P.G.,* 251 S.W.3d 117, 127 (Tex. App.– Corpus Christi 2008, no pet.).

Here, there is no evidence of any grave harm facing BV if she were returned to Brazil. *England*, 234 F.3d at 272 (finding district court erred in applying grave risk exception where no evidence in the record of potential psychological harm). Respondent's allegations of physical violence toward her were not substantiated by anyone other than Respondent herself and, with the exception of an allegation that Petitioner pushed her while she was holding the infant BV, there are no allegations — or indications — that Petitioner ever directed any physical or psychological harm at his daughter. *Van Driessche*, 466 F. Supp.2d at 847 (grave harm exception did not apply where no evidence in record that father was physically or psychologically abusive to his daughter, even though there were allegations of abuse to mother); *In re A.V.P.G.,* 251 S.W.3d at 127 ("The focus is on the children....It does not matter if Guajardo is the better parent in the long run, had good reason to leave her home in Belgium and terminate her marriage, or whether she will suffer if the children are returned to Belgium."); *Edoho*, 2010 WL 3257480 at 6 (finding respondent failed to meet burden of proving grave danger exception when there was conflicting evidence about abuse of older son). Having heard the evidence presented here, the Court declines to find that returning BV to Brazil would expose her to physical or psychological harm or otherwise place her in an intolerable situation.

For the same reasons, the Court declines to find that fundamental principles of human rights and fundamental freedoms would not permit BV's return. CONVENTION, art. 20; 42 U.S.C. § 11603(e). Such exceptions simply have not been shown in this case.

*Consent or Acquiescence*

It is also an exception to BV's removal if Petitioner was not actually exercising the custody rights at the time of removal or retention or consented to or subsequently acquiesced to the removal or retention. CONVENTION, art. 13(a). "Acquiescence under the Convention requires either an act or statement with the requisite formality, such as testimony in a judicial proceeding; a convincing written enunciation of rights; or a consistent attitude of acquiescence over a significant period of time." *In re A.V.P.G.,* 251 S.W.3d at 126. A respondent must show this exception by clear and convincing evidence. *See* 42 U.S.C. § 11603(e). Having considered the facts here, the Court finds that Respondent did not show this exception by clear and convincing evidence.

While the evidence presented indicates Petitioner may have saddled his parents (BV's paternal grandparents) with many of his parenting responsibilities, the evidence presented does indicate that Petitioner was involved in BV's life while she was in Brazil. She attended his alma mater, and he claims to have seen her on a regular, if not daily, basis. In the Fifth Circuit, even occasional contact with the child constitutes "exercise" of any custody rights under the Convention. *Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 345 (5th Cir. 2004). Further, no evidence presented indicates that, after Respondent and BV came to Texas, he wholly acquiesced to her being here. Although he did not come to Texas (nor does it appear he made any sincere attempts to contact her after she left Brazil), there is evidence that Petitioner made efforts in Brazil to effectuate her return. While such efforts may not be legally sufficient to avoid the one-year limitation period in seeking her return, they are enough to show that he did not acquiesce or consent to her removal.

CONCLUSION

The Court's role in this matter is very limited. The Court is not tasked with determining Petitioner's custody rights as to BV, only whether she was wrongfully removed from Brazil. *See* 42 U.S.C. § 11601; *In re A.V.P.G.,* 251 S.W.3d at 122. Whether Respondent's conduct and representations in the Denton County Family Court as to BV's paternity and other issues warrant review is a matter for that Court, not the undersigned. Similarly, whether her conduct in removing BV from Brazil has criminal implications in that country is not for this Court but a matter for that jurisdiction to determine. Because the Court finds that, even if there were wrongful removal here, Respondent has satisfied the well-settled and age and maturity exceptions outlined in the Hague Convention, the Petition for Return of Child should be DENIED and this matter should be closed on the Court's docket.

The Court further finds that, pursuant to 42 U.S.C. § 11607, Petitioner should be required to bear the costs incurred by the Court in hearing the action, including the cost of the court-appointed interpreter in the amount of $388.00 and the court-appointed guardian ad litem in the amount of $1,176.27. 42 U.S.C. § 11607(b)(2) ("Petitioners may be required to bear the costs of legal counsel or advisors, court costs incurred in connection with their petitions...."); 28 U.S.C. § 1920 (6) (court may tax as costs the fees of interpreters and experts); *see also Gaddis v. U.S.*, 381 F.3d 444, 455 (5th Cir. 2004) (guardian ad litem fees can be taxed as costs). Such reimbursement should be made to the Court within 10 days of the final disposition of this case. Petitioner and Respondent shall each bear their own legal fees, costs, and travel expenses.

Finally, while the Court finds that BV's return to Brazil is not warranted, its findings herein should not be construed as a finding that Petitioner should be prevented from seeing or forming a relationship with his daughter. Petitioner has access to BV's mailing address and an email address where she can be reached. It is clear to the Court that Petitioner genuinely seeks to have a relationship with BV, and the Court encourages both Petitioner and Respondent to act in a manner to facilitate this desire, as it is in the best interests of all involved.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 1st day of March, 2011.**

                                                                         _____
                                                                         DON D. BUSH
                                                                         UNITED STATES MAGISTRATE JUDGE